**Michael ROBTOY, Plaintiff–Appellant,**

**v.**

**Lawrence KINCHELOE,
Defendant–Appellee.**

**No. 86–3625.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1988.

Decided March 31, 1989.

David B. Bukey, Seattle, Wash., for plaintiff-appellant.

Theresa L. Fricke, Asst. Atty. Gen., Dept. of Corrections, Olympia, Wash., for defendant-appellee.

Before POOLE, CANBY and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Michael Robtoy appeals the district court's denial of his petition for a writ of habeas corpus. Robtoy contends that his sentence of life without parole is unconstitutional under *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), because he could not have received such a sentence had he chosen to plead guilty rather than be tried by a jury. Robtoy also contends that the Washington Supreme Court's refusal to allow him to change his plea violated due process and that his confession is inadmissible under *Miranda.* We reverse the district court on the sentencing issue and affirm on the plea change and confession issues.

## FACTS AND PRIOR PROCEEDINGS

In 1979 Robtoy was convicted by a jury of aggravated first degree murder and sentenced to death in Washington's Kitsap County Superior Court.

The facts leading to the conviction are as follows. Robtoy was arrested in Oregon for escape from a Washington prison and given *Miranda* warnings. Two days after his arrest, he was questioned in the Umatilla County jail for approximately three hours by Detective Dean and Officer Rusty Simpson. Robtoy admits that prior to questioning, he was informed of his *Miranda* rights and that he signed a written acknowledgement and waiver of those rights. During questioning, before he confessed, Robtoy told Dean, "maybe I should call my attorney." Dean testified in the state court pretrial hearing that shortly after Robtoy made the reference to counsel, Dean responded, "Mike, if you say you want your attorney, this conversation ends right here," and that Robtoy responded that he understood. Dean testified that he then told Robtoy that questioning would proceed and "if we arrived at a point where [Robtoy] didn't want to answer any questions, he didn't want to say anything more, or he wanted his attorney, to say so, and [Robtoy] said 'okay.'" In response to Dean's questions, Robtoy confessed that he strangled David King and also confessed that he had murdered Ruth Pitts a year earlier.

Subsequently, Robtoy was taken to Kitsap County, Washington, given the *Miranda* warnings, questioned, served with a warrant for first degree murder, and again given the *Miranda* warnings. At his arraignment, Robtoy stood mute and the court entered a not guilty plea on his behalf. After conducting a pretrial hearing, the Kitsap County Superior Court ruled that Robtoy's confession was admissible, finding that Robtoy's reference to counsel was equivocal and that he validly waived his *Miranda* rights before he was questioned.

Following a jury trial for first degree aggravated murder, Robtoy was convicted and sentenced to death under Washington's death penalty statute, RCW 10.94.010–.900 and 9A.32.040, .046, and .047 (repealed 1981). In a case involving Robtoy and six other petitioners, a majority of the justices of the Washington Supreme Court found Washington's death penalty statute unconstitutional under *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), because the statute reserved the death penalty only for those who chose to go to trial. *State v. Frampton,* 95 Wash. 2d 469, 480 (Dolliver, J.), 497 (Brachten-

bach, C.J.), 497 (Williams, J.), 512–13 (Stafford, J.), 514 (Utter J.), 627 P.2d 922, 927, 936, 944–45 (1981).

Although the sentence of life without parole was also reserved solely for defendants who chose to go to trial, a majority of the *Frampton* court declined to hold that life without parole was also unconstitutional. *Id.* at 500 (Rosellini, J.), 512 (Dore, J.), 513 (Stafford, J.), 530 (Dimmick, J.), 530 (Hicks, J.), 530 (Brachtenbach, C.J.), 627 P.2d at 938, 944, 952–53. Accordingly, Robtoy's death penalty sentence was modified to life without parole pursuant to a savings provision in the former death penalty statute. *Id.* at 526, 627 P.2d at 951; *see* former RCW 9A.32.047; 10.94.900.

After he was sentenced, Robtoy became aware that he had the right to plead guilty with a maximum sentence of life with parole.[1] Robtoy made a motion in the trial court to withdraw his not guilty plea and enter a plea of guilty. The Washington Supreme Court held that the trial judge had no jurisdiction to grant Robtoy's motion. *State v. Robtoy*, 98 Wash.2d 30, 653 P.2d 284 (1982).

Robtoy petitioned in federal district court for a writ of habeas corpus on the grounds that his sentence of life without parole was unconstitutional, that he should have been allowed to withdraw his guilty plea, and that his confession was inadmissible under *Miranda.* Adopting the report and recommendation of a magistrate, the court dismissed the confession issue on summary judgment. Later, the district court entered an order denying the sentencing claim. Robtoy timely appealed. The district court granted a certificate of probable cause.

## DISCUSSION

### Standard of Review

We review de novo a district court's decision to deny a petition for writ of habeas corpus. *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.1987), *cert. denied,* —

U.S. ——, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). While the historical factual findings of a state court are presumed correct and will not be set aside unless lacking fair support in the record, we may give different legal weight to such facts. *Hayes v. Kincheloe*, 784 F.2d 1434, 1436 (9th Cir. 1986), *cert. denied,* — U.S. ——, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987); *see Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (per curiam).

### I. Constitutionality of Sentence

Robtoy contends that his sentence of life without parole is unconstitutional under *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). His contention has merit.

In *Jackson*, the United States Supreme Court concluded that the Federal Kidnaping Act, which allowed imposition of the death penalty solely by means of a jury verdict, was unconstitutional because it operated "to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." *Id.* at 581, 88 S.Ct. at 1216 (footnote omitted). In addition to concern with chilling the exercise of basic constitutional rights, the Court expressed concern with "penalizing those defendants who plead not guilty and demand jury trial." *Id.* at 582, 88 S.Ct. at 1217.

Robtoy was sentenced to death pursuant to Washington's death penalty statute, former RCW 10.94 and 9A.32. Under that statute, the provisions allowing imposition of the death penalty (9A.32.040(1)) and of life without parole (9A.32.040(2)) applied only where the trial judge could reconvene the same jury that tried the defendant. *See* RCW 10.94.020(2), (9), (10); *see also State v. Martin*, 94 Wash.2d 1, 8, 614 P.2d 164, 167 (1980). Accordingly, the maximum penalty on a plea of guilty to first

---

1. In *State v. Martin,* 94 Wash.2d 1, 614 P.2d 164 (1980), decided shortly after Robtoy's conviction and sentence, the Washington Supreme Court construed Washington's death penalty statute, which has subsequently been revised, and held that under that legislation, defendants to charges of aggravated murder had the right to plead guilty and receive a maximum sentence of life with parole.

degree murder was life imprisonment with a possibility of parole. *See* RCW 9A.32.-040(3) and 9.95.115; *see also Martin* at 9, 614 P.2d at 168. Both a Washington Supreme Court rule and the death penalty statute gave first degree murder defendants the right to have their guilty pleas accepted. *See Martin* at 4, 614 P.2d at 165–66; RCW 10.40.060.

In *Frampton*, Robtoy's original sentence of death was modified to life without possibility of parole, a sentence Robtoy could not have received if he had pled guilty. Therefore, Robtoy's sentence is unconstitutional under *Jackson* because his assertion of his right to a jury trial was penalized. *See Jackson*, 390 U.S. at 583, 88 S.Ct. at 1217.

■■■ The state contends that Robtoy "lacks standing" under *Jackson* because his exercise of his right to a jury trial was not chilled. However, *Jackson* applies to statutes that penalize the right to a jury trial, as well as to statutes that chill that right. *Jackson*, 390 U.S. at 583, 88 S.Ct. at 1217; *see also Parker v. United States*, 400 F.2d 248, 252 (9th Cir.1968), *cert. denied*, 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed. 2d 789 (1969) (a defendant who exercises his right to a jury and incurs a sentence he otherwise would not have received has standing under *Jackson* ); *Sims v. Eyman*, 405 F.2d 439, 446 n. 3 (9th Cir.1969) (Arizona defendant who received death penalty after trial by jury lacked standing under *Jackson* only because, under Arizona statute, judge as well as jury could impose the death penalty), *judgment vacated in part on other grounds*, 408 U.S. 934, 92 S.Ct. 2850, 33 L.Ed.2d 746 (1972).

The state further questions Robtoy's standing under *Jackson*, arguing that at the time Robtoy was sentenced, there was no disparity between the sentences of defendants who pleaded guilty and defendants who exercised their right to a jury trial because *State v. Martin* had not yet been decided. *Martin* holds that Washington's former death penalty statute contained no provision whereby a defendant to first degree murder who pled guilty could receive the death penalty or a sentence of life without parole. 94 Wash.2d at 9, 614 P.2d at 168. *Martin*, however, neither altered nor added to Washington's death penalty statute, but merely interpreted it.

Finally, the state contends that *Jackson* does not apply where the death penalty is not at issue and the disparity in sentence is that between life with parole and life without possibility of parole. The state is incorrect. First, *Jackson* is not limited to death penalty cases. In this circuit the constitutionality of a costs provision in an income statute was analyzed under *Jackson* in *United States v. Chavez*, 627 F.2d 953, 955–57 (9th Cir.1980), *cert. denied*, 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981). Second, the difference between life sentences with and without possibility of parole is a disparity significant enough to invoke *Jackson*. *See Solem v. Helm*, 463 U.S. 277, 297, 103 S.Ct. 3001, 3013, 77 L.Ed. 2d 637 (1983) (defendant's sentence of life without possibility of parole unconstitutional as disproportionate because a life without parole sentence is "far more severe than [a] life sentence"); *see also Chatman v. Marquez*, 754 F.2d 1531, 1536 (9th Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985) (a prisoner is "substantially benefitted" when his sentence is changed from life without possibility of parole to life with possibility of parole).

We reverse the district court's denial of Robtoy's petition for a writ of habeas corpus on the ground that his sentence of life without parole was unconstitutional under *United States v. Jackson*.

## II. Denial of Motion to Plead Guilty

■■■ Robtoy contends that the Washington Supreme Court's refusal to allow him to alter his plea to guilty violated his right to due process because his right to make a voluntary and intelligent plea was denied when he was not informed at his arraignment that a plea of guilty would result in a maximum sentence of life with parole. However, Robtoy's contention cannot constitute the basis for a writ of habeas corpus. Although Robtoy may have been misinformed by his counsel and the court as to the consequences of a guilty

plea, he did allow a plea of not guilty to be entered for him. Thus, he cannot argue he was coerced to give up the rights inherent in a trial. Moreover, there is no federally guaranteed right to have a court accept a plea of guilty. *North Carolina v. Alford,* 400 U.S. 25, 39 n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970). Accordingly, Robtoy has failed to show that the state's refusal to allow him to change from a not guilty to a guilty plea deprived him of a federal right; thus, we cannot grant him relief under 28 U.S.C. § 2254.

### III. Robtoy's Confession

■ Robtoy contends that his confession is inadmissible because the police elicited it in violation of his fifth amendment right to counsel during custodial interrogation. Robtoy contends that after he made an equivocal request for counsel, Detective Dean attempted to elicit incriminating remarks before Dean clarified whether Robtoy presently desired to speak to an attorney. Robtoy's contentions lack merit.

■ The fifth and fourteenth amendment right to counsel applies during custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). If a suspect indicates in any manner that he wishes to consult with an attorney before speaking, there can be no questioning. *Id.* at 444–45, 86 S.Ct. at 1612–13. Police questioning after an ambiguous or equivocal request for an attorney must cease, except that police may clarify the suspect's desire for counsel. *United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). The critical factor in determining the validity of the government's behavior is "whether a review of the whole event discloses that the interviewing agent has impinged on the exercise of the suspect's continuing option to cut off the interview." *Id.* (citation omitted).

Here, the Kitsap County trial court ruled that the confession was admissible even though it was preceded by Robtoy's equivocal request for counsel. The trial court did not specifically evaluate whether Dean's follow-up questioning was limited to ascertaining whether Robtoy presently desired an attorney. However, the state trial court's written findings include a discussion of the dialogue between Robtoy and Dean after Robtoy's equivocal request. The state trial court found that Dean "reinstructed him as to his rights; that the defendant understood them and understanding them did go ahead and make the statement that he wanted to [confess]— that he did because he wanted to. He felt it was going to be a thing that he ought to do." It seems implicit in the trial court's finding that Dean clarified Robtoy's desire to see an attorney before Dean resumed questioning about the crime. Moreover, the Washington Supreme Court, in affirming the Kitsap County Superior Court's ruling admitting the confession, found as follows:

> After Robtoy made his equivocal statement regarding an attorney, Detective Dean sought clarification of Robtoy's words. There was no further interrogation about any offense until Dean was satisfied Robtoy toy had no present desire to have the presence of an attorney. Further, Robtoy was reminded by Detective Dean that he would cease questioning immediately if Robtoy wanted to remain silent or speak with an attorney.

*State v. Robtoy,* 98 Wash.2d at 41, 653 P.2d at 291. The factual findings of both state appellate and trial courts are presumed correct under section 2254(d) unless the hearing was procedurally defective in some manner not at issue here, the findings are not supported by the record, or the petitioner overcomes the presumption by clear and convincing evidence. *Fendler v. Goldsmith,* 728 F.2d 1181, 1190–91 n. 21 (9th Cir.1983).

Here, the record supports the state courts' findings that Dean, before he resumed interrogation, ascertained that Robtoy had no present desire for counsel. Dean testified before the state trial court that after Robtoy's reference to counsel, Dean twice reminded him that questioning would stop if Robtoy wanted an attorney and both times Robtoy said that he under-

stood. Dean further testified that he told Robtoy he would resume questioning and whenever Robtoy did not want to say anything more without an attorney, Robtoy could say so. Officer Simpson, who was present during Robtoy's interrogation, corroborated Dean's testimony. Dean's and Simpson's testimony show that Dean did not "impinge ... on the exercise of the suspect's continuing option to cut off the interview." *Fouche*, 833 F.2d at 1287.

## CONCLUSION

We reverse the district court's denial of the writ of habeas corpus on the ground that Robtoy's sentence of life without parole is unconstitutional. We remand this case to the district court with the direction that it issue the writ and determine a reasonable time within which to resentence Robtoy.