**Nedley G. NORMAN, Jr.,
Petitioner–Appellant,**

v.

**Kenneth DUCHARME,
Respondent–Appellee.**

No. 87–4345.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1988.

Decided March 31, 1989.

Before POOLE, CANBY and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Nedley G. Norman appeals the district court's denial of his petition for a writ of habeas corpus. Norman contends that his sentence of life without parole is unconstitutional under *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), because he could not have received such a sentence had he chosen to plead guilty rather than be tried by a jury. Norman also contends that his confession was inadmissible on various constitutional grounds. We reverse the district court on the sentencing issue and affirm on the confession issue.

## FACTS AND PRIOR PROCEEDINGS

In 1978 Norman was convicted of first degree aggravated murder and sentenced to death in Pierce County Superior Court for the shooting death of Deputy Sheriff Dennis Allred.

Norman was arrested pursuant to a warrant issued after the filing of an information charging him with first degree murder.[1] He was arrested and advised of his *Miranda* rights. After handcuffing him, Detective Dean showed Norman a copy of his arrest warrant. The warrant stated that an information had been filed, charging Norman with first degree murder.

After being arrested, Norman was transported to the County Sheriff's office. During the drive, Norman asked Officer Henry whether he should get an attorney. Henry declined to advise him. At the County Sheriff's office, Norman was read *Miranda* warnings again, this time from a paper that contained a written waiver, which he signed.

Subsequently, Dean questioned Norman and typed a copy of the questions and Norman's answers. The typed statement,

---

John Midgley, Smith, Midgley & Pumplin, Seattle, Wash., for petitioner-appellant.

Linda A. Dalton and Theresa L. Fricke, Asst. Attys. Gen., Olympia, Wash., for respondent-appellee.

1. Subsequently, an amended indictment charging aggravated first degree murder was filed.

which Norman signed, contained Norman's confession that he had killed Allred. Norman was arraigned approximately two and a half hours after his arrest.

In a pretrial hearing, the state court held that Norman's confession was admissible based on the following written findings and conclusions: (1) Norman did not request an attorney before he made his statement; (2) Norman was not induced to confess by threats, promises, or tricks; (3) the typed report of Norman's responses to Dean's questions was not altered after Norman initialed and signed it; (4) Norman had the mental capacity to waive his *Miranda* rights and he did waive those rights; (5) while Norman gave his statement, his hands were not malfunctioning and he was not hyperventilating. The Washington Court of Appeals affirmed the trial court's admission of Norman's confession. The Washington Supreme Court denied review.

Following a jury trial for first degree aggravated murder, Norman was convicted and sentenced to death under Washington's death penalty statute, RCW 10.94.010–.900 and 9A.32.040, .046, and .047 (repealed 1981). In a case involving Norman and six other petitioners, a majority of the justices of the Washington Supreme Court found Washington's death penalty statute unconstitutional under *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), because the statute reserved the death penalty only for those who chose to go to trial. *State v. Frampton*, 95 Wash. 2d 469, 480 (Dolliver, J.), 497 (Brachtenbach, C.J.), 497 (Williams, J.), 512–513 (Stafford, J.), 514 (Utter J.), 627 P.2d 922, 927, 936, 944–45 (1981).

Although the sentence of life without parole was also reserved solely for defendants who chose to go to trial, a majority of the *Frampton* court declined to hold that life without parole was also unconstitutional. *Id.* at 500, 627 P.2d 922 (Rosellini, J.), 512 (Dore, J.), 513 (Stafford, J.), 530 (Dimmick, J.), 530 (Hicks, J.), 530 (Brachtenbach, C.J.), 627 P.2d at 938, 944, 952–53. Accordingly, Norman's death penalty sentence was modified to life without parole pursuant to a savings provision in the

former death penalty statute. *Id.* at 526, 627 P.2d at 951; *see* former RCW 9A.32.-047; 10.94.900.

Norman petitioned in federal court for a writ of habeas corpus on the grounds that his sentence of life without parole was unconstitutional and his confession inadmissible under the fifth, sixth, and fourteenth amendments. A federal magistrate recommended that Norman be granted relief on the sentencing issue and denied relief on the confession issue. The district court, however, entered an order denying the petition for writ of habeas corpus on all grounds raised. Norman timely appealed. The district court denied a certificate of probable cause; this court granted one.

## DISCUSSION

### Standard of Review

■ We review de novo a district court's decision to deny a petition for writ of habeas corpus. *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.1987), *cert. denied,* — U.S. —, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). While the historical factual findings of a state court are presumed correct and will not be set aside unless lacking fair support in the record, we may give different legal weight to such facts. *Hayes v. Kincheloe*, 784 F.2d 1434, 1436 (9th Cir.1986), *cert. denied,* — U.S. —, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987); *see Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (per curiam).

### I. Constitutionality of Sentence

■ Norman contends that his sentence of life without parole is unconstitutional under *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). His contention has merit. For the reasons stated in *Robtoy v. Kincheloe*, decided this date, 871 F.2d 1478 (9th Cir.1989) we reverse the district court's denial of Norman's petition for a writ of habeas corpus on the ground that his sentence of life without parole is unconstitutional under *Jackson*.

## II. Admissibility of Confession

### A. *Norman's Alleged Requests for Counsel*

■ Norman contends that his confession is inadmissible because the police elicited it during custodial interrogation after he asked Officer Henry, when being transported to the County Sheriff's office, if he should see a lawyer, and allegedly requested of Detective Dean, during interrogation, to allow Norman to call an attorney. Norman's contentions lack merit.

The fifth and fourteenth amendment right to counsel applies during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If a suspect indicates in any manner that he wishes to consult with an attorney before speaking, there can be no questioning. *Id.* at 445, 86 S.Ct. at 1612.

*Question to Henry.* Police questioning after an ambiguous or equivocal request for an attorney must cease, except that police may clarify the request. *United States v. Fouche*, 776 F.2d 1398 (9th Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). In *Fouche*, the court found an equivocal request for counsel when the defendant was read his rights, stated he understood them, signed a form waiving the right to counsel, then "stated that he might want to speak to a lawyer, and wanted to make a phone call." *Id.* at 1401.

■ Norman does not allege that he ever stated to Henry that he might want to see an attorney, wanted to make a phone call, asked why he shouldn't see an attorney and asked to speak to Henry's superior. Mere mention of an attorney does not constitute an equivocal request for counsel, as the word "attorney" is not talismanic. *Bruni v. Lewis*, 847 F.2d 561, 564 (9th Cir.1988) (*United States v. Jardina*, 747 F.2d 945, 949 (5th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985)), *cert. denied,* —— U.S. ——, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988). We conclude that Norman's question to Henry did not rise to the level of an equivocal request for counsel.

■ *Alleged Request to Dean.* Norman testified in state court proceedings that he told Officer Dean he wanted counsel, and that Dean refused to allow him to obtain counsel. Dean testified that Norman's assertions were absolutely false. The state trial court found that Norman did not request counsel of Dean. Absent certain circumstances, the state court's findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *See Fendler v. Goldsmith*, 728 F.2d 1181, 1190–91 n. 21 (9th Cir.1983), *citing Brewer v. Williams*, 430 U.S. 387, 403, 97 S.Ct. 1232, 1241–42, 51 L.Ed.2d 424 (1977). Norman's bare allegation in his petition that he requested counsel of Dean is not sufficient to overcome the statutory presumption that the state court's findings were correct. *See Townsend v. Sain*, 372 U.S. 293, 312–313, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963).

### B. *Validity of Norman's Written Waiver*

■ Norman contends his waiver was not valid under the sixth amendment because he was unaware an information had been filed and because the waiver was uncounselled. Norman's contentions lack merit.

The validity of a waiver is a mixed question of law and fact requiring independent federal review. *Terrovona v. Kincheloe*, 852 F.2d 424, 428 (9th Cir.1988). Under both the fifth and sixth amendments, waiver must be voluntary and a knowing and intelligent relinquishment of a known right or privilege. *Brewer v. Williams*, 430 U.S. at 404, 97 S.Ct. at 1242.

*Knowing Waiver Under the Sixth Amendment.* The sixth amendment right to counsel attaches when formal judicial proceedings are initiated against an individual. *United States v. Karr*, 742 F.2d 493, 495 (9th Cir.1984). This right to counsel attached before Norman's interrogation and confession because an information had

been filed against him.[2] The Supreme Court has declined to decide whether an accused must be told that he has been formally charged before he can knowingly and intelligently waive the sixth amendment right: "[W]e do not address the question of whether or not an accused must be told that he has been indicted before a postindictment Sixth Amendment waiver will be valid. Nor do we even pass on the desirability of so informing the accused—a matter that can be reasonably debated." *Patterson v. Illinois,* —— U.S. ——, 108 S.Ct. 2389, 2396–97 n. 8, 101 L.Ed.2d 261 (1988). Here, Norman was at the time of his arrest shown a copy of his arrest warrant, which stated that an information charging first degree murder had been filed. Even if Norman had no opportunity to read the entire warrant, the display of the warrant was sufficient to apprise a lay person such as Norman of the nature of the crime for which he was being arrested and the gravity of his situation. Accordingly, Norman's waiver was knowing under the sixth amendment whether or not he knew an information had been filed.

*Whether Uncounselled Waivers Are Per Se Invalid.* Norman's contention that this court should hold that uncounselled waivers made after initiation of formal judicial proceedings are per se invalid under the sixth amendment is refuted by *Patterson v. Illinois.* There the Supreme Court upheld an uncounselled waiver by an indicted defendant who was given *Miranda* warnings. *Patterson,* 108 S.Ct. at 2395.

*Voluntariness of Waiver.* Norman attempts to raise an issue as to the voluntariness of his written waiver. He appears to maintain that since he did not tell the officer when he signed the form that he was going to give a statement, and did not indicate orally or by conduct other than his signature that he intended to waive his rights, he did not waive them. An express written waiver of the right to remain silent, while not inevitably sufficient to establish waiver, is usually strong proof. *North Carolina v. Butler,* 441 U.S. 369, 373, 99

S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). Norman's allegations are not sufficient to raise a question about the voluntariness of his waiver.

### C. *Voluntariness of Norman's Confession*

Norman contends that his confession was involuntary. Norman's contention lacks merit.

Involuntary confessions in state criminal cases are inadmissible under the fourteenth amendment. *Blackburn v. Alabama,* 361 U.S. 199, 207, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). The voluntariness of a confession is evaluated by reviewing both the police conduct in extracting the statements and the effect of that conduct on the suspect. *Miller v. Fenton,* 474 U.S. 104, 116, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985). Absent police misconduct causally related to the confession, there is no basis for concluding that a confession was involuntary in violation of the fourteenth amendment. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986) (*but see* Justice Brennan's dissent at 525–528).

■ Norman contends that his confession was involuntary because eight police were present during his arrest, they were arresting him for the murder of a police officer, they were interrogating him with the purpose of convicting him because an information had been filed, and they failed to follow their customary procedure of tape recording suspects' statements. Such allegations, even if true, do not constitute police misconduct and thus cannot render his confession involuntary under the fourteenth amendment. *See Colorado v. Connelly,* 107 S.Ct. at 521.

■ Norman also contends his confession was involuntary because the police unlawfully delayed his arraignment. However, Norman has not raised an issue of police misconduct in connection with the

---

**2.** In the State of Washington, formal judicial proceedings are fully commenced against a criminal defendant upon the filing of an infor-

mation by a prosecutor. Washington Criminal Rule 2.1(a); RCWA 10.07.010.

approximately two and a half hours that elapsed between his arrest and arraignment. *Cf. United States v. Manuel,* 706 F.2d 908, 914 (9th Cir.1983) (delay exceeding six hours is one factor to be considered in evaluating voluntariness of a confession under 18 U.S.C. § 3501).

Norman also alleges that his confession was involuntary because Detective Dean told him that two of his codefendants told the police Norman shot a policeman, when in reality only one of the co-defendants so stated. The state trial court found that Norman's confession was not induced by any false statement. There is no reason to question that finding. *See Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969) (interrogators misrepresenting to the defendant that his co-defendant had already confessed held no ground for finding defendant's confession involuntary).

Norman also alleges his confession was induced by the police's "threat" that what happened would depend on Norman's side of the story. The state trial court specifically found that Norman was not threatened. Norman alleges no circumstances that would make it reasonable to question the state court's finding; moreover, the alleged threat does not appear to rise to the level of police misconduct in view of the fact that any defendant's fate depends in part on what he tells the police.

Finally, Norman alleges that at the time of his confession he suffered psychological trauma that made him incapable of a voluntary confession. The state trial court made written findings that Norman had the mental capacity and free will necessary to make a valid waiver of his right to remain silent and that he confessed after he made a knowing, intelligent, and voluntary waiver of his rights to remain silent. According to the summary of psychiatric evidence in Norman's brief, neither his own nor the state's psychiatrist, both of whom testified at the state court pretrial hearing, were willing to testify that Norman's confession was involuntary.

Norman admits that he was interrogated for no more than two hours before he confessed. Norman received the *Miranda* warnings and signed a waiver, which is "a circumstance quite relevant to a finding of voluntariness." *Frazier v. Cupp,* 394 U.S. at 739, 89 S.Ct. at 1425. Norman has failed to show police misconduct. Accordingly, there is no basis to conclude that Norman's confession was involuntary.

## CONCLUSION

We reverse the district court's denial of the writ of habeas corpus on the ground that Norman's sentence of life without parole is unconstitutional. We remand this case to the district court with the direction that it issue the writ and determine a reasonable time within which to resentence Norman.