**UNITED STATES of America**

v.

**Derrick JONES.**

**No. 91 CR 956(S–1).**

United States District Court, E.D. New York.

Jan. 27, 1993.

Michael Soroka, Garden City, NY, for defendant Derrick Jones.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

On November 13, 1992, this Court held a hearing in the above-referenced prosecution on defendant Jones' motion to suppress his post-arrest statements on the ground that they were obtained in violation of his Miranda rights. At the hearing, the government offered the testimony of Postal Inspector Bernard Morrison, whom the Court found to be a credible witness. Jones did not present any witnesses or other evidence.

The Court reserved decision on the motion and ordered the parties to brief two issues: first, whether Jones invoked his right to have counsel present at his interrogation; and second, the impact, if any, of the cooperation between the state and federal authorities in the investigation of defendant. Having received the parties' submissions, the Court is prepared to rule on the motion to suppress. The Court denies the motion for the reasons stated below.

### FINDINGS OF FACT

In cooperation with the New York City Police, the Postal Inspection Service participated in an investigation into the robbery of certain United States Post Offices, including those robberies charged in the instant indictment. Pursuant to his involvement in this investigation, Postal Inspector Morrison interviewed Stefon Brown,[1] who admitted both his own and Derrick Jones' involvement in the Spring Creek Post Office robbery. As a result, Morrison arranged to go speak with Jones, who was being held on Rikers Island on a gun charge. Inspector Greg Tutelian accompanied Morrison.

When Jones met the inspectors, they gave him a rights and waiver form and read it to him aloud. Jones did not sign the waiver at first. Instead, he expressed concerns about the safety of his family and asked for a further explanation of the

Mary Jo White, U.S. Atty., E.D. of New York, Brooklyn, NY by Stanley J. Okula, Asst. U.S. Atty., for U.S.

---

**1.** Mr. Brown was also a defendant in this matter but on December 4, 1992, he plead guilty.

waiver, which Morrison provided. Inspector Morrison then told Jones that he was aware that Jones had counsel in connection with unrelated state charges that were pending against him. In response to this comment, Jones provided Morrison with the business cards of two attorneys who were representing him in two state cases against him.

One half hour elapsed between this exchange and Jones' written waiver.[2] During this half hour, the inspectors questioned Jones regarding the post office robberies. Jones admitted to some knowledge of a post office robbery but declined to testify or give a written statement about it. At no time did Jones ask to speak to an attorney.

## DISCUSSION

■ It is well settled that before a custodial interrogation, suspects must be informed of their rights to remain silent and to the presence of an attorney. *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Although these rights may be knowingly, intelligently and voluntarily waived, if a suspect requests counsel, all interrogation must cease until an attorney is present. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). Moreover, questioning may not continue without the attorney unless the defendant initiates further discussions with the police and knowingly and intelligently waives the right he had invoked. *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488 (1984).

■ When a criminal defendant challenges the admissibility of his post-arrest statements, the government bears the burden of proving the voluntariness of the confession by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 482–89, 92 S.Ct. 619, 623–27, 30 L.Ed.2d 618 (1972). If the government asserts that a defendant has waived his Fifth Amendment rights, it also carries the burden of proving waiver by a preponderance of the evidence.

*Colorado v. Connelly,* 479 U.S. 157, 167–69, 107 S.Ct. 515, 521–23, 93 L.Ed.2d 473 (1986). Against this back-drop, the Court turns to the instant case.

### A. *Equivocal Nature of Statements*

■ To trigger the protections of *Edwards,* the right to counsel must be "specifically invoked". 451 U.S. at 482, 101 S.Ct. at 1884. However, sometimes the request of an accused is equivocal. In such instances, the Second Circuit has held that "interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." *United States v. Gotay,* 844 F.2d 971, 975 (2d Cir.1988) (citations omitted). Questions aimed at clarifying a request "must be strictly limited to that purpose and may not be used to elicit incriminating information; the police may not use a statement made after an equivocal request but before the request is clarified." *Id.* (citing *United States v. Fouche,* 776 F.2d 1398, 1405 (9th Cir.1985) (citations omitted)).

■ The question in this case is whether defendant's display of the business cards of his attorneys on unrelated state charges, in response to Morrison's comments regarding Jones' representation in those proceedings, constitutes an equivocal invocation of Jones' right to counsel in the federal investigation. This Court has not found any cases in this Circuit or others in which the rule of *Gotay* is followed where a defendant merely confirms that he has attorneys on unrelated charges. However, courts have consistently warned against finding an equivocal invocation any time there is a mere reference to an attorney. *See United States v. Scarpa,* 701 F.Supp. 379, 381 (E.D.N.Y.1988), *aff'd,* 897 F.2d 63 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990) (court warns against endowing the word "lawyer" with "talismanic qualities"); *Nash v. Estelle,* 597 F.2d 513, 519 (5th Cir.1979). For example, in *Norman v. Ducharme,* 871 F.2d

**2.** After Jones signed the waiver, he detailed his own involvement in the Spring Creek Post Office robbery, as well as the involvement of Deas Bynum, Stefon Brown, and Kenke Monite.

1483 (9th Cir.1989), *cert. denied,* 494 U.S. 1031, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990), the Ninth Circuit, applying the same rule as *Gotay,* held that a defendant who asked the arresting agent if he should get an attorney did not "equivocally" invoke his right to counsel. *Id.* at 1486. In *United States v. Jardina,* 747 F.2d 945 (5th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985), the Fifth Circuit, noting that "[a] defendant does not invoke his right to counsel any time the word falls from his lips", held that the defendant did not equivocally invoke his right to counsel when he "suggested that through his lawyer he wanted to work out a deal with the government." *Id.* at 948–49.

The implication of the decisions in this area is that the reference to an attorney must appear to be a likely, if ill-expressed attempt by the accused to invoke his or her right to an attorney. *See, e.g., Gotay,* 844 F.2d at 973 (defendant said she could not afford a lawyer and was concerned about getting one); *Fouche,* 776 F.2d at 1401 (court found request equivocal when defendant "stated that he might want to speak to a lawyer and wanted to make a phone call"); *United States v. Yan,* 704 F.Supp. 1207, 1208 (S.D.N.Y.1989) (defendant made statement concerning ability to afford counsel); *see also United States v. Presti-giacomo,* 504 F.Supp. 681, 683 (E.D.N.Y. 1981) (defendant stated "Maybe it would be good to have a lawyer"); *United States v. Chansriharaj,* 446 F.Supp. 107, 109 (S.D.N.Y.1979) (defendant said he had a friend who was "trying to arrange for a lawyer"). One commentator, cited by Judge Glasser in his decision in *United States v. Scarpa,* stated the appropriate test, and the one that courts appear to implement, as follows: "[t]o invoke the pro-

tection of Fifth or Sixth Amendment counsel in confession contexts, any conduct that a reasonable person would conclude is more likely than not an expression of a present desire for counsel ought to suffice". *Scarpa,* 701 F.Supp. at 381 (quoting Tomkowicz, *Standards for Invocation and Waiver of Counsel in Confession Contexts,* 71 Iowa L.Rev. 975, 1012–13 (1986)).

Jones' actions, in the Court's view, do not suggest that it is even likely, let alone more than likely, that he was attempting to invoke his right to counsel but did not properly communicate his wishes.[3] More importantly, as noted, his actions are certainly even more ambiguous than those held by other circuits to fall short of the standard enunciated in *Gotay. See, e.g., Norman,* 871 F.2d at 1489; *Jardina,* 747 F.2d at 949. Thus, to invoke the holding of *Gotay* in this case, where defendant's display of his attorneys' business cards was merely in response to the inspector's statements regarding the state charges against him, would be to improperly impute to him an intent which is not adequately reflected in his actions. In such instances, the defendant has not expressed sufficient " 'vulnerability and need [to] justify the heightening of protections that follows invocations.' " *Scarpa,* 701 F.Supp. at 382 (quoting Tomkowicz, *Standards or Invocation,* 71 Iowa L.Rev. at 1013). Accordingly, the Court declines to grant defendant's motion on this ground.

### B. *Cooperation Between State and Federal Officials*

■ Defendant argues, in the alternative, that the Postal Inspectors and the New York City Police were acting under a "working agreement" in order to develop evidence against Jones regarding postal and bank robberies. Accordingly, defen-

---

**3.** Moreover, on at least one occasion, the Second Circuit has considered the sophistication of the defendant and his history in the criminal justice system in determining whether his intent in making reference to a lawyer was meant as an invocation of his right to have a lawyer present. In *Scarpa,* the Second Circuit noted that when the defendant stated that he would get a lawyer, his "confidence, familiarity with the law and determination" indicated that his

statement referred to the future and not to his desire for a lawyer during the interrogation at issue. 897 F.2d 63, 70 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990). In this case, defendant's extensive dealings with the law, as reflected in his criminal record, suggest that he too was sufficiently sophisticated to have expressed any desire for a lawyer in relatively explicit terms.

dant maintains that his statements should be suppressed.

Defendant cites to *United States v. Anderson,* 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943) in support of his position. In *Anderson,* state officials illegally detained various suspects in connection with an investigation into the bombing of federal property. During the illegal detentions, federal agents questioned the suspects and elicited statements that were later used to obtain convictions against them. The Supreme Court held that the statements should have been suppressed because the suspects were being held illegally by the state officials and the state and federal officials had a "working relationship". *Id.* at 356, 63 S.Ct. at 602.

Because *Anderson* is premised on the illegal nature of the initial detention, it is inapposite to the instant case, where defendant acknowledges that he was properly detained in Riker's Island. Moreover, defendant's argument that the local officials used the federal agents to circumvent New York law is misplaced: such a plan is illogical in a case, such as this, where the inspectors were acting pursuant to an investigation into federal crimes, over which the New York City Police had no jurisdiction.[4]

### CONCLUSION

The Court finds that the government has satisfied its burden of proving the voluntariness of defendant's statements and that defendant did not equivocally invoke his right to counsel. Therefore, defendant's motion for suppression of his statements as taken in violation of his Miranda rights is denied.

SO ORDERED.

---

**4.** In the recent Second Circuit case of *United States v. Maturo,* 982 F.2d 57 (2d Cir.1992) (available on Westlaw, CTA2 database), the Court held that evidence obtained by foreign officials may be excluded if the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials. However, this holding cannot be analogized to the instant case because, as noted, the New York City Police did not have jurisdiction over the crimes investigated in the interrogation at issue here. Accordingly, they would have no reason to "use" federal officials to circumvent New York State constitutional standards.