**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN WASHINGTON,
                *Petitioner-Appellant,*

v.

ROBERT O. LAMPERT,
                *Respondent-Appellee.*

No. 04-35381

D.C. No.
CV 00-1632 KI

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
May 3, 2005—Portland, Oregon

Filed September 6, 2005

Before: Procter Hug, Jr., A. Wallace Tashima, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Tashima

12301

**COUNSEL**

Christine Stebbens Dahl, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Jennifer S. Lloyd, Office of the Attorney General, Salem, Oregon, for the respondent-appellee.

## OPINION

TASHIMA, Circuit Judge:

Kevin Washington, a state prisoner convicted of aggravated murder and other offenses, appeals the district court's denial of his petition for a writ of habeas corpus. In his habeas petition, Washington asserts a claim of ineffective assistance of counsel ("IAC") in the negotiation and execution of his sentencing stipulation, which waived his right to appeal in exchange for a stipulated sentence of life imprisonment with the possibility of parole.

While a district court has habeas jurisdiction under 28 U.S.C. §§ 2241 and 2254, whether the district court here had jurisdiction turns on whether Washington's waiver of his right to file a federal habeas petition is enforceable with respect to an IAC claim that challenges the validity of the waiver itself. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

## BACKGROUND

### I.  State Court Trial

In December 1994, during the course of a robbery, Kevin Washington ("Washington") murdered James Loupe ("Loupe") in the presence of Loupe's children. Washington was found guilty of two counts of aggravated murder, first degree robbery, first degree burglary, and second degree assault.

Before the sentencing phase of trial, the State and Washington negotiated an agreement stipulating to a sentence of "life imprisonment with the possibility of parole under ORS 163.105(1)(c) and 36 months to run consecutively." The stipulation further stated:

Having been fully informed by his attorneys of the sentencing options available in this case and having been fully informed of possible legal and constitutional challenges to both the jury verdict and the possible sentences, the defendant specifically waives any legal or constitutional objections to pretrial proceedings, rulings by the court, his trial, the jury verdict, his conviction, and to the sentence he will receive based on this stipulation. This waiver is intended to eliminate the possibility of any future litigation regarding the defendant's pretrial motions, his trial, conviction, entry into this agreement, or sentencing. It includes all existing or future claims, known or unknown, and all types of judicial or other review, including but not limited to all claims for post-conviction relief or federal habeas corpus relief.

The stipulation also stated that "[t]he defendant expressly acknowledges and agrees that he is fully and completely satisfied with the advice and representation he has received from his attorneys."

The trial court explained the terms of the stipulation to Washington, stating:

Last Thursday the jury found you guilty of various things. As you know, the next step is to determine the sentence.

And the Aggravated Murder, the jury determines the sentence, okay, and their choices are . . . the death penalty, life without parole, called true life, and life with the possibility of parole after 30 years, but you can request it, you can start requesting parole after 20, and they can turn you down, okay?

It also explained that, in return for Washington's waiver, "the state is agreeing not to seek . . . the death sentence or the life

without the possibility of parole." The court then engaged Washington in the following exchange:

Court:      And I guess what I want to know from you is you understand what that is, what you're doing there?

Defendant:  Yes.

Court:      Okay, why don't you repeat to me what you're doing. . . .

Defendant:  If I sign this, by signing this agreement I give up my rights for all appeals.

Court:      All appeals. And what we call post-conviction.

Defendant:  Yeah, post-conviction.

Court:      Post-conviction, you can go and say my attorney didn't do a good job for me, they were a bunch of clucks, et cetera. You also give up the right to that. You understand?

Defendant:  Uh-huh.

The court then questioned Washington about whether he was satisfied with the representation provided by his attorneys Gareld Gedrose and Ed Jones:

Court:      Now, you've — Mr. Gedrose and Mr. Jones have been representing you from the very — from the beginning here. Any complaints?

Defendant:  No.

| Court: | I mean, obviously they didn't win, that's a complaint, but any other things that they could have done that you felt they should have done or anything like that? |
| --- | --- |
| Defendant: | No. |

Pursuant to the stipulation, the trial court sentenced Washington to a term of life with the possibility of parole, with the minimum sentence set at 30 years, as well as a term of 36 months imprisonment, to be served consecutively. Washington did not file a direct appeal.

## II.   State Court Post-Conviction Proceedings

In 1997, Washington filed a Petition for Post-Conviction Relief in state court. He stated the following claims for relief: "prosecutorial & judicial misconduct — ineffective assistance of counsel — denial of due process & equal protection of the laws." The petition alleged, in relevant part:

> After the guilty verdicts, my court-appointed lawyers actively pressured me into accepting a 30 year to life sentence and give up my appellate rights to cover-up their outrageaous [sic] conduct which deprived me of an unbiased, unprejudiced, independent and informed trial jury, a fair trial, and due process of law.

The State moved for summary judgment, arguing that the court should enforce Washington's voluntary and knowing waiver of his right to post-conviction relief. The motion was supported by one of Washington's trial attorneys, Gareld Gedrose ("Gedrose"). Gedrose's affidavit stated:

> I made a point of spending a considerable amount of time discussing the options available to Mr.

Washington regarding the State's offer. We discussed at length the options available to the jury at this particular stage of the proceedings. I explained to him that there was a possibility of him receiving the death penalty. I expressed my feeling that while I did not think he was a strong candidate for the death sentence, the circumstances surrounding the shooting, the fact that it happened in front of the victim's young children, the fact that it occurred at christmas [sic] and the body was recovered under the Christmas tree, would all allow a jury to reach a different conclusion and impose the death sentence.

* * *

During the course of our conversations, Mr. Washington expressed a distaste for all the options available to him but recognized that, at this stage in the proceedings, it simply was not going to get any better, and while the death penalty was somewhat remote, it was a real possibility and the possibility of a true life sentence was certainly a reality. The opportunity to receive a sentence which included the possibility of parole was his best option and certainly in his best interest.

Gedrose concluded: "I do believe that Mr. Washington did accept and agree to the stipulation with his eyes open and did realize what he was receiving in return. It was a rational decision based on his understanding of the facts and the law as best I could explain them to him."

In his opposition to the State's motion for summary judgment, Washington cited to both state and federal cases discussing the nature of valid, voluntary, and intelligent waivers. He did not cite to *Strickland v. Washington*, 466 U.S. 668 (1984).

At the hearing on the State's motion for summary judgment, Washington testified that he did not understand the nature of post-conviction relief and that he did not fully understand the waiver of his right to appeal: "I really didn't know much about it until I was, until I got down here I really didn't know what it was." He also testified that he simply followed his attorneys' instructions and didn't fully understand what his attorney was explaining to him.

The state court granted the State's motion for summary judgment and Washington appealed to the Oregon Court of Appeals. On appeal, Washington argued that the trial court "erred when it found no genuine issue of material fact regarding whether [he] knowingly and voluntarily waived his rights to direct appeal and post-conviction relief." Washington also asserted that the court erred "when it determined that [he] presented no genuine issue of material fact in his application for post-conviction relief based upon the claim of inadequate assistance of trial counsel under the Oregon and Federal Constitutions because of counsel's failure to explain the consequences of the stipulated sentencing agreement." In support of his IAC argument, Washington cited to and discussed both the Sixth Amendment and federal cases, including *Strickland*. Washington filed an affidavit in support of his appeal, stating: "I believe I was coerced into taking a Plea agreement without being fully aware of what I was giving up. . . . I don't think anyone given the proper legal advice would have given up what I did, in return for the sentence I received."

Addressing Washington's IAC claim, the Oregon Court of Appeals concluded that Washington had not shown prejudice. The court explained:

> petitioner offered no evidence that, had he understood the terms of the stipulation, he would have risked the imposition of the death penalty for an opportunity to pursue post-conviction relief. Likewise, on appeal, petitioner makes no claim that the

lack of a more thorough explanation of the terms of the stipulation prejudiced him in any way.

The state court of appeals affirmed the trial court's grant of summary judgment.

Washington then filed a petition for review with the Oregon Supreme Court. He again raised the claim that his trial counsel's failure to explain the consequences of the stipulated sentencing agreement amounted to constitutionally defective assistance of counsel. The Oregon Supreme Court summarily denied the petition for review, without opinion.

## III. Federal Habeas Corpus Proceedings

Washington then filed a federal petition for a writ of habeas corpus. He asserted eight grounds for relief, many of which cited to the Sixth Amendment and alleged that he received ineffective assistance of counsel in entering into the sentencing stipulation waiving his right to appeal. Washington alleged that his trial counsel was ineffective because counsel "actively pressured his client into accepting a life sentence with a thirty (30) minimum." He also alleged that "[t]rial counsel was ineffective and defendant was denied due process of law where counsel coerced his client into waiving his constitutional right to appeal his trial and judgment of conviction plus his collateral attack of post-conviction relief." Finally, Washington asserted that his trial counsel failed to inform him of the consequences of his accepting the terms of the stipulation and "used false promises and inaccurate predictions to get his client to agree to the state's stipulated sentencing offer."

In its response to the petition, the State explained that "Petitioner killed James Loupe in front of his two children, underneath their Christmas tree. Before killing Loupe, petitioner told the children to 'tell your father goodbye.' " The State argued that the petition should be dismissed because

Washington validly waived his right to appeal or collaterally attack his conviction and sentence.

The district court reasoned that, "[i]n order to proceed with this case, petitioner must first show that he is entitled to bring this action despite waiving his federal habeas corpus remedy." It noted that Washington asserted that his waiver was invalid because he was given ineffective assistance of counsel. The district court found no actual conflict of interest and no prejudice, and therefore concluded that Washington's waiver of his right to file a federal habeas corpus petition was valid, and denied the petition. Washington filed a timely notice of appeal and the district court granted a certificate of appealability.

## STANDARD OF REVIEW

We review de novo the district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition. *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004). We may affirm on any ground supported by the record even if it differs from the rationale of the district court. *Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004). We review findings of fact made by the district court for clear error. *See Riley v. Payne*, 352 F.3d 1313, 1317 (9th Cir. 2003).

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner must demonstrate that the state court's adjudication of the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003). State court findings of fact are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *McClure v. Thompson*, 323 F.3d 1233, 1241 (9th Cir. 2003).

## DISCUSSION

### I.   Jurisdiction — Waiver of the Right to Appeal

Before we proceed to the merits of Washington's claim, we must first determine whether Washington's waiver of the right to file a federal habeas petition was valid because, if it was, then the district court lacked jurisdiction to hear the case. Washington argues that the sentencing stipulation's waiver of the right to appeal is unenforceable with respect to an IAC claim challenging the validity of the waiver itself.

[1] Neither the Supreme Court nor this court has addressed the issue of whether a waiver of the right to file a collateral challenge is unenforceable with respect to an IAC claim implicating the voluntariness of the waiver itself. We have, however, observed that other circuits have barred waivers of IAC claims associated with the negotiation of plea agreements, and explained that "[c]laims of ineffective assistance of counsel . . . challenge the voluntary and intelligent nature of the plea agreement." *United States v. Ruiz*, 241 F.3d 1157, 1164 (9th Cir. 2001), *overruled on other grounds*, 536 U.S. 622 (2002).

Further, we have expressed "doubt" that such a waiver could be enforceable. In *United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994), the petitioner previously had directly appealed from his judgment of conviction and sentence, contending that he had received ineffective assistance of counsel. *Id.* at 432. We concluded that Pruitt, through his plea agreement, had waived his right to appeal. *Id.* at 432-33. Pruitt then filed a collateral challenge pursuant to 28 U.S.C. § 2255, which the district court denied. *Id.* at 433. We observed that the plea agreement did not waive the right to bring a § 2255 motion, reached the merits of the IAC claim, and affirmed the district court's denial of the § 2255 motion. We explained that "[w]e doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's errone-

ously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain." *Id.* Because the issue was not squarely presented, however, we concluded that "we need not face this issue here." *Id.*

Similarly, in *United States v. Jeronimo*, 398 F.3d 1149 (9th Cir. 2005), the defendant filed a direct appeal of the district court's rejection of his request to withdraw his guilty plea. *Id.* at 1153. Jeronimo's plea agreement provided that Jeronimo waived his right to appeal and to file a petition pursuant to 28 U.S.C. § 2255. *Id.* at 1154. On appeal, Jeronimo argued that "his attorney's failure to advise him of all the possible consequences of a guilty plea deprived him of the information necessary to render his plea — and the waiver of appeal contained therein — truly knowing and voluntary." *Id.* at 1155. We observed that IAC claims ordinarily are not reviewed on direct appeal. *Id.* We then explained:

> We leave open the possibility that Jeronimo might raise his ineffective assistance argument on federal habeas procedure, through a § 2255 motion, notwithstanding that Jeronimo's appeal waiver covered "all his waivable statutory rights to file a petition pursuant to 28 U.S.C. § 2255 challenging the length of his sentence."
>
> . . .
>
> [B]ecause the issue is not squarely presented in this case on direct appeal, we leave for another day our assessment of whether a waiver such as made by Jeronimo can be challenged through a § 2255 motion questioning the validity of the waiver.

*Id.* at 1156 n.4. We concluded that Jeronimo's waiver was valid and enforceable because the waiver was unambiguous and the record failed to demonstrate that it was not knowingly and voluntarily made. *Id.* at 1157. *See also United States v.*

*Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) (explaining that, "[w]hile we do not hold that Abarca's waiver categorically forecloses him from bringing any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver," Abarca's challenge to his degree of culpability was clearly foreclosed by the waiver).

**[2]** We note that a number of other circuits have explicitly held, in the context of § 2255 challenges brought by federal prisoners, that waivers cannot bar IAC claims associated with the negotiation of plea agreements. *See United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) ("[A] waiver of appeal may not be enforced against a section 2255 petitioner who claims that ineffective assistance of counsel rendered that waiver unknowing or involuntary."); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel.").

**[3]** For example, in *Jones v. United States*, 167 F.3d 1142 (7th Cir. 1999), the Seventh Circuit held that a plea agreement or post-conviction cooperation agreement that waives the right to file a petition under § 2255 is unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver. *Id.* at 1145. The Seventh Circuit reasoned that

> [j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself — the very product of the alleged

ineffectiveness. To hold otherwise would deprive a
defendant of an opportunity to assert his Sixth
Amendment right to counsel where he had accepted
the waiver in reliance on delinquent representation.

*Id.* The court then observed that, "[o]rdinarily we would
remand to the district court for a determination whether Jones
was in fact denied effective assistance of counsel or whether
the agreement was involuntary." *Id.* at 1145-46. The court
noted that Jones, however, "merely advances the naked asser-
tions that he was denied effective assistance of counsel" with-
out identifying the substance of the claim. *Id.* Therefore, the
court reached the merits of the claim and rejected it. *Id.*

**[4]** The Seventh Circuit's reasoning in *Jones* applies with
equal force here, in the context of a state prisoner's federal
habeas petition pursuant to § 2254. Indeed, the state acceded
as much at oral argument. We therefore hold that a plea agree-
ment that waives the right to file a federal habeas petition pur-
suant to 28 U.S.C. § 2254 is unenforceable with respect to an
IAC claim that challenges the voluntariness of the waiver.

**[5]** Because Washington's waiver is unenforceable with
respect to the claim he asserts in his federal habeas petition,
the district court had jurisdiction over the petition pursuant to
28 U.S.C. §§ 2241 and 2254.

## II.  Exhaustion

The State argues that Washington failed to exhaust his IAC
claim. Before a federal court may grant habeas relief to a state
prisoner, the prisoner must exhaust his remedies in state court
by giving the state courts an opportunity to correct the alleged
constitutional violation. 28 U.S.C. § 2254(b)(1)(A);
*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Neverthe-
less, "[a]n application for a writ of habeas corpus may be
denied on the merits, notwithstanding the failure of the appli-
cant to exhaust the remedies available in the courts of the

State." 28 U.S.C. § 2254(b)(2). Whether Washington exhausted the claim he raises here presents a close question. It is, however, a question that we need not resolve, because we deny Washington's claims on the merits.

## III.   Ineffective Assistance of Counsel

Washington argues that his attorneys' representation during the negotiation and execution of the sentencing stipulation constituted an actual conflict of interest that warrants a presumption of prejudice. First, Washington asserts that his counsel "could not ethically advise him on whether to waive his right to pursue an ineffective assistance of counsel claim against them." Washington cites to Oregon Bar Disciplinary Rule 6-102(A), which provides that "[a] lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement." Second, Washington asserts that, because prejudice should be presumed based on the existence of an actual conflict, he need not demonstrate adverse effect. Third, Washington asserts that the sentencing stipulation was based on "false promises and inaccurate predictions" and coercion by his attorneys and therefore was not voluntary and intelligent.

To prove an IAC claim premised on an alleged conflict of interest, a petitioner must "establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). "While 'a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief,' the Supreme Court also clarified in *Cuyler* that 'until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.' " *Garcia v. Bunnell*, 33 F.3d 1193, 1198 (9th Cir. 1994) (quoting *Cuyler*, 446 U.S. at 349-50). "The client must demonstrate that his attorney made a choice between possible

alternative courses of action that impermissibly favored an interest in competition with those of the client." *McClure*, 323 F.3d at 1248.

For example, in *Williams v. Calderon*, 52 F.3d 1465 (9th Cir. 1995), we rejected the petitioner's argument that an actual conflict of interest existed because "the fact that payment for any investigation or psychiatric services could have come from counsel's pocket forced counsel to choose between Williams' interests and his own." *Id.* at 1473. We reasoned that "[a]ll Williams alleges is the same theoretical conflict that exists between an attorney's personal fisc and his client's interests in any pro bono or underfunded appointment case. Such arrangements, without more, do not require Sixth Amendment scrutiny." *Id.*

As for the effect of state bar disciplinary rules,

> The [Supreme] Court has yet to "define with greater precision the weight to be given to recognized canons of ethics, the standards established by the state in statutes or professional codes, and the Sixth Amendment" in defining the proper scope of and limits on attorney conduct for *Strickland* purposes. It has, however, suggested that when "virtually all of [those] sources speak with one voice" as to what constitutes reasonable attorney performance, departure from ethical canons and ABA guidelines "make[s] out a deprivation of the Sixth Amendment right to counsel."

*McClure*, 323 F.3d at 1242 (quoting *Nix v. Whiteside*, 475 U.S. 157, 165-66 (1986)).

**[6]** The Supreme Court has, however, articulated a specific test for IAC claims challenging guilty pleas, which are analogous to the sentencing stipulation challenged here. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that

the *Strickland* test for evaluating IAC claims applies to guilty plea challenges based on ineffective assistance of counsel. *Id.* at 58. The Court reasoned that a defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Thus, to prevail, the petitioner must show that (1) counsel's representation fell below the range of competence demanded of attorneys in criminal cases, and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58-59.

**[7]** Here, Washington fails to satisfy either of the tests set forth in *Cuyler* and *Hill*. Washington points to no evidence that "demonstrate[s] that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client." *McClure*, 323 F.3d at 1248. Rather, the evidence shows that Washington's counsel wisely negotiated a bargain that allowed Washington the lightest possible sentence, thus avoiding imposition of either the death penalty or life imprisonment without the possibility of parole — sentences that appeared likely, given the circumstances of the murder.

**[8]** Further, even if we consider Oregon Bar Disciplinary Rule 6-102(A) in determining whether an actual conflict of interest existed, it appears that, similar to the petitioner in *Williams*, all that Washington alleges is the same theoretical conflict that exists between an attorney's interests and his client's interests in most plea agreement negotiations involving a waiver of the right to appeal. *See Williams*, 52 F.3d at 1473. Washington points to no evidence demonstrating that any conflict, actual or theoretical, adversely affected his attorneys' performance. Further, Washington points to no evidence indicating that, had his attorneys performed differently, he would

have rejected the sentencing stipulation and insisted on proceeding with the sentencing phase of trial. *See Hill*, 474 U.S. at 60 (rejecting IAC claim because petitioner did not allege that, "had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial").

**[9]** Finally, Washington points to no evidence demonstrating that his agreement to enter into the sentencing stipulation was not voluntary, knowing, or intelligent. The transcript of the colloquy shows that the court meticulously explained the rights that Washington was agreeing to waive, including post-conviction proceedings and IAC claims, and that Washington understood the nature of the waiver. In sum, Washington fails to demonstrate that the state courts' rejection of his IAC claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d).

The district court's denial of Washington's petition for writ of habeas corpus is therefore

**AFFIRMED.**