**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 31 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GERALD WESLEY MILLER,

        Petitioner-Appellant,

  v.

GEORGE BALDWIN,

        Respondent-Appellee.

No.   16-35587

D.C. No. 3:96-cv-00114-CL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted November 9, 2017
Portland, Oregon

Before:    TASHIMA and W. FLETCHER, Circuit Judges, and LASNIK,[**]
District Judge.

    We write primarily for the parties who are familiar with the facts. Appellant

Gerald Miller was convicted of murdering his two wives after they both

disappeared five years apart under similarly suspicious circumstances. His federal

---

    [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]     The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

habeas petition chiefly challenged the trial court's ruling that evidence of each wife's disappearance was relevant and cross-admissible in the case of the other's murder, and that the two murder charges should be joined in one trial. The district court denied relief,[1] and granted a certificate of appealability. Mr. Miller appealed.[2]

We review a district court's denial of habeas relief *de novo*, and we may affirm on any ground supported by the record. *Washington v. Lampert*, 422 F.3d 864, 869 (9th Cir. 2005). Mr. Miller's claims pre-date the Antiterrorism and Effective Death Penalty Act. We review *de novo* state courts' conclusions of federal law and mixed questions of law and fact, *Burton v. Davis*, 816 F.3d 1132, 1140 (9th Cir. 2016), but we are bound by state courts' determinations of state law, *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994).

Mr. Miller's challenges relate to root claims that: (1) the cross-admission of evidence deprived him of a fair trial; (2) joinder of the murder charges deprived him of a fair trial; (3) there was insufficient evidence supporting his convictions; (4) trial counsel was constitutionally ineffective for mentioning but never calling

---

[1]    The district court held that four of Mr. Miller's claims were procedurally defaulted, which depends on the peculiar timing of his trial, appeal, and significant decisions in Oregon's appellate courts. Given that idiosyncrasy and our conclusion that the claims fail regardless, we will not address the issue of procedural default. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).

[2]    The district court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. § 2253.

an expert witness; and (5) the trial court violated his right to counsel by admitting certain statements he made to law enforcement.

Mr. Miller also appeals the denial of derivative claims of ineffective assistance of counsel. Those claims require showing that counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

**1.** Mr. Miller raises several challenges related to the cross-admission of each wife's disappearance as evidence in the case of the other wife's murder.[3] Admitting otherwise inadmissible evidence violates due process "only if there are *no* permissible inferences the jury may draw from the evidence," *McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993), *as amended* (Jun. 10, 1993) (citation omitted), and if "the erroneously admitted evidence was of such quality as necessarily prevents a fair trial," *id.* (citation omitted) (emphasis in original).

---

[3] This group of challenges covers claims that: the trial court deprived him of a fair trial by admitting the evidence, and that his various attorneys were ineffective for failing to adequately challenge that ruling; he was deprived of a fair trial by the prosecution relying on a "theory of probabilities"; his various attorneys were ineffective for failing to challenge comments by the prosecutor during closing arguments; and his trial attorney was ineffective for failing to adequately challenge the trial court's answer to a question the jury asked during deliberations.

It is a permissible inference, referred to as the "doctrine of chances," to consider two otherwise independent events that, taken together, are unlikely to be coincidental. *See Estelle v. McGuire*, 502 U.S. 62, 69 (1991). That differs from the inference covered by the character evidence rule, which prohibits inferring a defendant's guilt based on an evil character trait. *See Michelson v. United States*, 335 U.S. 469, 475–76 (1948). The Supreme Court has referred to the former inference in the context of admitting a deceased child's previous injuries as evidence the death was not accidental. *See Estelle*, 502 U.S. at 68–69 (explaining the evidence "demonstrated that [the victim's] death was the result of an intentional act by *someone*, and not an accident"); *see also Lisenba v. California*, 314 U.S. 219, 227–28 (1941) (affirming constitutionality of testimony about first wife's death as evidence in trial for second wife's murder). Circuit courts of appeal[4] and state appellate courts[5] have relied on these inferences as well.

---

[4] *See, e.g.*, *United States v. Henthorn*, 864 F.3d 1241, 1252 n.8 (10th Cir. 2017) ("[T]he doctrine of chances is merely one name to call a common sense observation that a string of improbable incidents is unlikely to be the result of chance . . . ." (internal marks omitted)), *cert. denied*, No. 17-7008 (Jan. 8, 2018).

[5] *See, e.g.*, *Commonwealth v. Hicks*, 156 A.3d 1114, 1132 (Pa. 2017) ("[M]ost jurisdictions recognize the 'doctrine of chances' . . . as a theory of logical relevance that does not depend on an impermissible inference of bad character, and which is most greatly suited to disproof of accident or mistake.").

Here, the trial judge found the evidence was admissible to show "the deaths were not accidental or from natural causes or that the disappearances were not a coincidence." That was a permissible inference relevant to an essential element of the crime charged. *See Estelle*, 502 U.S. at 69; *McKinney*, 993 F.2d at 1384. Contrary to Mr. Miller's assertions, the jury could have permissibly inferred that the disappearances resulted from "intentional act[s] by *someone*, and not [by] accident." *Estelle*, 502 U.S. at 69. It did not require a character-based inference to reach that conclusion or the conclusion that the "someone" was Mr. Miller.

Because each disappearance was admitted for a permissible purpose in the case of the other murder, the district court did not err in denying Mr. Miller's claim that admitting the evidence violated due process, or his derivative claims of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687–88. For the same reason, the district court did not err in denying Mr. Miller's claim that he was deprived of a fair trial by the prosecution relying on a "theory of probabilities."

The district court did not err in denying Mr. Miller's claims related to the prosecutor's comments in closing arguments. The prosecutor stated the jury could consider evidence of one wife's disappearance in the other's murder case, and referenced a phrase from the defense closing that "lightning doesn't strike twice." Mr. Miller asserted trial and appellate counsel were ineffective for failing to adequately challenge those comments. Given our evidentiary conclusion above,

5

Mr. Miller makes no showing of a different outcome had trial or appellate counsel challenged the comments. *See id.*

Finally, the district court did not err in denying Mr. Miller's claim that trial counsel was ineffective for failing to challenge the answer to the jury's question. The judge had instructed not to infer guilt for one murder "because the defendant ha[d] been charged with the [other] murder." The jury asked if that meant "charged only." The judge responded "the instruction means exactly what it says." As noted, the jury could permissibly consider each disappearance as evidence of the other murder. Mr. Miller cannot show deficient performance or prejudice. *See id.*

**2.** Mr. Miller appeals the district court's denial of his claims related to the joinder of his murder charges.[6] For joinder to be constitutionally impermissible, "[t]he simultaneous trial of more than one offense must actually render [the] state trial fundamentally unfair." *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998) (citation omitted). "[P]rejudice is shown if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2005). It risks undue prejudice when joinder allows the introduction of otherwise inadmissible evidence, or when a strong evidentiary case is joined with a weak one. *Id.*

---

[6] These claims asserted that joinder deprived him of a fair trial, and that various attorneys were all ineffective for failing to properly challenge it.

6

Here, Mr. Miller was not unduly prejudiced. We are bound by the Oregon courts' rulings that the evidence for his two charges was cross-admissible on state grounds, *compare Bean*, 163 F.3d at 1083, and, as noted, those rulings do not contravene due process. Further, other than characterizations in Mr. Miller's briefs, nothing in the record indicates an evidentiary disparity between the two cases.

Mr. Miller asserts he suffered prejudice to his rights to testify and to remain silent, because he wished to testify in one wife's case and remain silent in the other's. We have required a stronger showing than Mr. Miller's for such arguments in the context of misjoinder claims under Federal Criminal Rule 8. *See, e.g.*, *United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983). In addition, the trial court ruled he could testify regarding one wife and avoid cross-examination on other. The circumstances did not "render [the] . . . trial fundamentally unfair," *Bean*, 163 F.3d at 1084, or "ha[ve] a substantial and injurious effect or influence [on] . . . the jury's verdict," *Sandoval*, 241 F.3d at 772. The district court did not err in denying Mr. Miller's claims related to misjoinder.

**3.**     The district court did not err in denying Mr. Miller's claims based on the sufficiency of the evidence.[7] In evaluating sufficiency-of-the-evidence claims,

---

[7]     This group of claims asserted the trial court violated due process when it denied his motion for judgment of acquittal, and that trial and appellate counsel were ineffective for failing to challenge that ruling on federal grounds.

"the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Mr. Miller's trial lasted more than one month, and included many witnesses and exhibits. Having reviewed the evidence included in the record, there was sufficient evidence for a rational juror to find Mr. Miller guilty beyond a reasonable doubt. The district court properly denied relief on Mr. Miller's claims related to the sufficiency of the evidence.

4.      The district court did not err in rejecting Mr. Miller's claims related to his trial counsel's decision to mention an expert witness during opening statements who the defense ultimately never called. Mr. Miller asserted that trial counsel was ineffective for not calling the expert, and for failing to object when the state emphasized the expert's absence in closing. Mr. Miller's attorney later explained that the testimony was no longer needed, because the state's expert had adjusted his theory. Counsel's decision did not fall outside an objectively reasonable range of representation, *see Strickland*, 466 U.S. at 688, and Mr. Miller does not show a reasonable probability that calling the expert would have changed the trial's outcome, *see id.* at 694.

5.      The district court did not err in denying Mr. Miller's claim that the trial court violated his right to counsel by admitting statements he made to a

8

detective without knowing he had been indicted. A defendant can waive his Sixth Amendment right to counsel if the waiver is "knowing and intelligent." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988). A valid *Miranda* warning[8] will generally "sufficiently apprise[] [a defendant] of the nature of his Sixth Amendment rights, and of the consequences of abandoning [them]." *Id.* at 296. If a defendant has been indicted, we have disavowed a categorical rule requiring he be notified of the indictment. *Norman v. Ducharme*, 871 F.2d 1483, 1487 (9th Cir. 1989). Instead, the inquiry is contextual and a waiver is valid if the circumstances indicate the defendant was apprised of his rights, the criminal liability he potentially faced, and the gravity of his situation. *Id.*

When Mr. Miller made the statements in question, he was fully apprised of his right to consult counsel and signed a valid *Miranda* form indicating he understood that right. He also chose to answer some questions and wait for legal counsel to answer others. The context and circumstances indicate that Mr. Miller's waiver was knowing and voluntary, that he appreciated the gravity of the legal situation he faced, and that he understood the implications of talking to law enforcement. The district court did not err in denying Mr. Miller's claim.

**AFFIRMED.**

---

[8] *Miranda* is a Fifth Amendment case that applies regardless of whether the suspect has been charged.

9