**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 10 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHARRIEFF BROWN, | No. 18-56432 |
| Petitioner-Appellant, | D.C. No. 2:12-cv-09126-DMG-MRW |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted November 8, 2019
Pasadena, California

Before: SCHROEDER and FRIEDLAND, Circuit Judges, and SILVER,** District Judge.

Petitioner-Appellant Sharrieff Brown appeals the district court's denial of

his petition for habeas corpus relief from his California state conviction for second-

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

degree murder and assault on a child resulting in death. At Brown's trial, the State had called as a witness a medical examiner who testified that the victim child's injuries were not consistent with Brown's account that an accidental fall had caused the child's death. The district court denied Brown's petition for habeas relief as to his claim of ineffective assistance of counsel based on his trial counsel's failure to discover and utilize impeachment evidence showing that the medical examiner had a history of changing his testimony in outcome-determinative ways in homicide cases, as to a related claim that the State's failure to disclose impeachment material about the medical examiner amounted to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and as to a cumulative error claim. It then granted a certificate of appealability as to all such claims. We affirm.

We review the denial of a habeas petition de novo, and any findings of fact made by the district court for clear error.[1] *Washington v. Lampert*, 422 F.3d 864, 869 (9th Cir. 2005). We may affirm on any ground supported by the record. *Id.*

Because Brown failed to raise the operative ineffective assistance of counsel claim within one year of the date on which his state judgment became final by the

---

[1] Brown argues that we should review some of his claims for clear error because they rest on underlying factual disputes. Because no factual disputes are relevant to our holding, however, we do not apply the clear error standard to any of the issues herein.

conclusion of direct review or expiration of the time for seeking such review, or within one year of any other tolling event, the claim was untimely. *See* 28 U.S.C. § 2244(d).

Brown argues that the claim was timely because his obligation to raise it was tolled, pursuant to 28 U.S.C. § 2244(d)(1)(D), to within one year of "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." We disagree.

The factual predicate for a habeas petition based on ineffective assistance of counsel exists when the petitioner has discovered (or with the exercise of due diligence could discover) facts suggesting both deficient performance and prejudice. *Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001). Brown argues that the factual predicate of his claim was his 2014 discovery that, at the time his trial counsel was litigating his case, the Los Angeles County Public Defender's ("LACPD") Office, where counsel worked, had boxes containing relevant impeachment material that counsel nevertheless did not discover or utilize. Brown contends that it was not until he learned that the impeachment materials were in the possession of his counsel's own office that he could overcome the strong presumption that his counsel had furnished adequate performance. *See Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Strickland v. Washington*, 466 U.S. 688, 689-90 (1984).

This argument fails because Brown clearly was aware of the basis for his ineffective assistance of counsel claim long before 2014. The factual predicate of Brown's ineffective assistance of counsel claim is the medical examiner's history of changing his medical testimony, which Brown knew about at least by November 2012, when his habeas counsel copied at the prosecutor's office boxes of impeachment material about the medical examiner.[2] Brown's counsel's failure to find or use widely available impeachment information and to do so after becoming aware of a California Supreme Court case identifying the existence of that information, *see People v. Salazar*, 112 P.3d 14 (Cal. 2005), likely was sufficient to support a claim that counsel's performance fell below prevailing professional standards, *see Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006) (explaining that failure to investigate possible methods of impeachment may constitute ineffective assistance of counsel). And discovery that the LACPD in fact had boxes of impeachment material made no material difference as to whether Brown could establish prejudice. *See Hasan*, 254 F.3d at 1154-55 (concluding that, although petitioner had earlier knowledge of some facts suggesting that counsel had been deficient, the factual predicate of his claim arose after new

---

[2] We need not resolve whether Brown knew of this factual predicate even earlier, such as at the time of trial. But, unlike our specially concurring colleague, we conclude that it was unreasonable for Brown's habeas counsel, after copying boxes of impeachment material, to continue to believe that Brown's trial counsel had conducted an adequate investigation.

4

information enabled a petitioner for the first time to make a prejudice argument in good faith).

To the extent Brown argues that his ineffective assistance of counsel claim is timely under a rationale that it relates back to either his first or his first amended habeas petition, we disagree. A claim may only relate back to an exhausted claim, *see King v. Ryan*, 564 F.3d 1133, 1142 (9th Cir. 2009), and none of the claims asserted in Brown's initial federal petitions were exhausted. Accordingly, because the factual predicate for Brown's claim arose no later than November 2012, no other tolling events occurred in the year following that date, and Brown's claim could not relate back to a claim in any prior petition, Brown's second amended petition was untimely and we affirm its denial.

Second, the district court did not err in denying Brown's *Brady* claim as unexhausted. To exhaust a habeas claim, a petitioner must clearly describe to the state court both the facts underlying the claim and the "specific federal constitutional guarantee" on which the claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Brown's petition to the California Supreme Court did not do this. To the contrary, it explicitly disavowed the *Brady* claim Brown had asserted in his first amended petition, gave no clear indication that Brown sought to raise a new *Brady* claim, and referenced the state's *Brady* obligations and failure to disclose information about the medical examiner to Brown's counsel only in the

5

course of explaining its claims for ineffective assistance of counsel and prosecutorial misconduct. It was therefore insufficient to present a *Brady* claim to the California Supreme Court. *See Gray*, 518 U.S. at 163; *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (explaining that the "citation of a relevant federal constitutional provision in relation to some other claim does not satisfy the exhaustion requirement"). Accordingly, we affirm the district court's dismissal of Brown's petition as to the *Brady* claim.

Finally, because "no error of constitutional magnitude occurred, no cumulative prejudice is possible," *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011), and the district court therefore properly denied the writ as to Brown's cumulative error claim.

**AFFIRMED.**

*Brown v. CDCR*, No. 18-56432

ROSLYN O. SILVER, District Judge, concurring.

I concur in the judgment affirming the District Court's denial of Brown's *Brady* and cumulative error claims, and in the judgment affirming the District Court's denial of Brown's ineffective assistance of counsel claim. However, I write separately because I view the ineffective assistance of counsel claim as timely such that resolving the claim on the merits is required. Pursuant to 28 U.S.C. § 2244(d), I find the relevant "factual predicate" for Brown's ineffective assistance of counsel claim to be the discovery by Brown's habeas counsel on January 29, 2014, that the Los Angeles County Public Defender's ("LACPD") Office had in its possession before Brown's trial a copy of impeachment material (the "Ribe boxes") demonstrating instances where medical examiner Dr. Ribe had changed his testimony. The one-year clock began running when Brown obtained sufficient knowledge that his trial counsel had failed to conduct an adequate pre-trial investigation: the necessary "facts suggesting both unreasonable performance *and* resulting prejudice." *Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001).

The majority considers the factual predicate to be Dr. Ribe's history of changing his medical testimony, and from this the majority concludes that the November 2012 discovery by habeas counsel of copies of the Ribe boxes in the Los Angeles District Attorney's ("LADA") Office was sufficient to start "[t]he 'due

diligence' clock . . . ticking." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012). In my view, Brown did not know, nor through diligence could Brown have discovered, the "vital facts" at the time of his trial. And I disagree with the majority's conclusions that Dr. Ribe's history of inconsistent testimony was enough to start the clock. This decision is based on what occurred at a pretrial conference when Deputy Public Defender Joel Lofton ("Lofton") was specifically told by the prosecution that the Ribe boxes did not exist.

On April 26, 2010, at the pretrial hearing, the trial judge *sua sponte* raised the question of "a host of [Fed. R. Evid.] 402 issues attendant with Dr. Ribe." Brown's trial counsel, Lofton, stated that he had not spoken with Deputy District Attorney Kelly Cromer ("Cromer") "at all about Dr. Ribe" and that he didn't "have any 402's on Ribe." Cromer then argued the Ribe boxes should be excluded from the cross-examination of Dr. Ribe. Lofton responded to Cromer by characterizing her statement as an assertion that "the People have a document of Dr. Ribe, they keep a file on Dr. Ribe," and stating "in that case the defense is asking for it." Cromer then responded unequivocally that LADA did not have any impeachment material that Lofton could request and receive, stating: "No, and counsel is mistaken; there are no files that the People keep on Dr. Ribe."

The record of the pretrial hearing makes clear that Lofton had a right to rely on Cromer's unambiguous representation that "there are no files that the People keep

2

on Dr. Ribe" and then conduct no further investigation. Given the strong presumption of adequate assistance, Brown would have had no reason to assume that Lofton's reliance on Cromer's representation constituted ineffective assistance of counsel. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

In November 2012, Brown's habeas counsel discovered the Ribe boxes were in fact in the possession of LADA at the time of trial, contrary to Cromer's representation. Cromer's misrepresentation at the trial impacted Brown's *Brady* and prosecutorial misconduct claims such that the magistrate judge granted a *Rhines* stay to permit exhaustion of those claims, but it did not impact Brown's claim that his trial counsel was ineffective.

Because the claim is timely, I then reach the merits of the ineffective assistance of counsel claim, and it fails. To establish counsel's assistance was constitutionally ineffective, a petitioner must prove counsel's performance was deficient, such that the "representation fell below an objective standard of reasonableness," and prove that the deficient performance prejudiced the defense such that "the decision reached would reasonably likely have been different absent the errors." *Strickland v. Washington*, 466 U.S. 668, 687–88, 696 (1984). The *Strickland* standard for deficient performance is highly demanding, and requires the petitioner prove "gross incompetence." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). To meet the *Strickland* standard for prejudice, the petitioner must show "a

3

'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, 563 U.S. at 189 (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

Furthermore, under the Antiterrorism and Effective Death Penalty Act, the relevant question when assessing an exhausted claim of ineffective assistance of counsel is not whether the two prongs of *Strickland* were met, but "whether the state court's application of the *Strickland* standard was unreasonable." *Atwood v. Ryan*, 870 F.3d 1033, 1056 (9th Cir. 2017) (quoting *Harrington*, 562 U.S. at 101). In other words, "'the question is not whether counsel's actions were reasonable,' but 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Martinez v. Ryan*, 926 F.3d 1215, 1226 (9th Cir. 2019) (quoting *Harrington*, 562 U.S. at 105).

I agree with the District Court that "[o]n habeas review, the state court would be hard pressed to say that the lawyer's inaction met the standard of professionalism expected of a competent defender." Lofton's failure to search LACPD's internal database of impeachment material, despite a protocol encouraging such searches and the obvious need to investigate the key prosecution witness, constituted deficient performance. Furthermore, Lofton's failure to consult with his direct supervisor (who had personal knowledge of the Ribe boxes and in fact had previously used them to impeach Dr. Ribe's credibility in a different case, and who regularly directed all LACPD attorneys working on cases involving Dr. Ribe to "make the appropriate

4

arrangements to view and review the materials maintained by the office"), during his very first murder trial, constituted gross incompetence.

But the state court's finding that Brown was not prejudiced by Lofton's failures was reasonable. The trial judge was familiar with the impeachment material and explicitly narrowed the scope of allowable cross-examination on Dr. Ribe's changed opinions to avoid "open[ing] up th[e] can of worms" of Ribe's previous testimony, basing his ruling "on [California Evidence Code §] 352 grounds." Thus, even had Lofton searched the database or spoken to his supervisor and thus obtained the Ribe boxes, Lofton may not have been able to use them effectively at trial. Such trial-within-a-trial issues are the type of state law evidentiary issue which are generally exempt from federal constitutional review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Furthermore, even if Lofton had successfully impeached Dr. Ribe's credibility, the jury could still have found Dr. Ribe more credible than defense expert Dr. Bonnell, who was impeached in a manner that cast a shadow on his competence and credibility. Brown has not shown a substantial likelihood of a different result. *Cullen*, 563 U.S. at 189.

Because Brown's ineffective assistance of counsel claim fails on the merits, I concur in the judgment affirming the District Court's dismissal of Brown's habeas petition.

5