# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>      v.<br><br>D.W.C.,<br><br>               Appellant. | No. 77171-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: December 17, 2018 |

APPELWICK, C.J. — D.C. was convicted of first degree robbery. He claims that the police unlawfully arrested him on the front porch of his home and that the trial court erred in denying his motion to suppress his postarrest statements. The arrest on D.C.'s front porch was lawful, and the trial court did not err in denying the motion to suppress. And, even if the arrest was unlawful, any error regarding the admission of his confession was harmless beyond a reasonable doubt. We affirm.

## FACTS

On the morning of August 30, 2016, four law enforcement agents went to the home of then-sixteen-year-old D.C. Detective Dorina Davis went to the home hoping to arrest D.C., based on the probable cause she had developed through her investigation. She did not have an arrest or search warrant.

Prior to that morning, Detective Davis had been investigating a robbery that occurred on August 24, 2016 at Magnuson Park. That day, teenagers, including S.I. and D.C., had left a house party and gone to nearby Magnuson Park. At the

park, three teenagers demanded that S.I. give them his jacket and shoes. One of the teenagers threatened S.I. with a knife, and S.I. gave them the requested items. S.I. and his father reported the incident to the police. Five days later, Detective Davis showed S.I. a photomontage of six males with similar characteristics to D.C., and S.I. identified D.C. as the person who robbed him at the park. The next day, Davis, along with Detective Ron Traverso and two police officers, went to D.C.'s home.

The two detectives and one officer approached the front of D.C.'s residence, while the other officer went to the back of the home. Detective Davis knocked on the door, and, after some time, D.C. came to the door. Davis told D.C. that she was a detective with Seattle police and that she was there "about the jacket that he took from a kid at Magnuson Park." D.C. responded by asking if he could get the jacket.

Davis asked D.C. to step out of the house, and, as he was stepping out onto the front porch, Davis grabbed his arm and told him that she was placing him under arrest. Another officer placed D.C. in handcuffs. The officers did not read D.C. Miranda[1] warnings until after they transported him to the police precinct. The police also did not inform D.C. of any additional warnings required prior to a search of his home.

After retrieving the jacket from D.C.'s home, the officers took D.C. to the police precinct. Detectives Davis and Traverso took D.C. to a second building to

---

[1] Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

conduct an interview. The detectives informed D.C. of his rights, and D.C. gave a recorded statement.

The State charged D.C. with first degree robbery. D.C. moved to suppress evidence from the search of his house and the statements he gave to police after his arrest, arguing that the arrest and search of his home were unlawful. The court heard testimony and arguments on D.C.'s motion to suppress.[2] The State conceded that the retrieval of the jacket from inside the home was an illegal, warrantless search. The trial court granted the motion to suppress any evidence discovered in the house, including the jacket. The trial court found that D.C.'s prearrest statement to police that he would "'get the jacket'" was admissible. And, the court found that D.C. voluntarily walked onto the porch, and that his arrest was lawful. The trial court concluded that D.C.'s recorded statements at the police station were not fruit of the illegal search, and that he had knowingly and voluntarily waived his rights under Miranda. Following the bench trial, the court found D.C. guilty of first degree robbery. D.C. appeals.

## DISCUSSION

D.C. argues that the police conducted a warrantless search and arrest that was unconstitutional. And, he argues that the trial court erred in admitting his recorded statement following his arrest, because it was inadmissible as fruit of the poisonous tree.

---

[2] Due to scheduling issues, the State put on some of its witnesses, including the victim, before the testimony and arguments on the motion to suppress.

3

When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. Id This court reviews conclusions of law from an order pertaining to the suppression of evidence de novo. Id

I.  Arrest

D.C. contends that the police "conducted an illegal search when they entered onto [his] property, without a warrant, and acted with the express purpose of arresting him." (Underlining omitted )

A police officer may make a warrantless felony arrest in a public place so long as it is supported by probable cause. State v. Solberg, 122 Wn.2d 688, 696, 861 P.2d 460 (1993). An arrest warrant is not required in such circumstances under either the federal or state constitutions. Id However, in the absence of exigent circumstances, police may not make a warrantless arrest after a nonconsensual entry into a suspect's home. Id at 696-97.

In Washington, absent exigent circumstances, "the police are prohibited from arresting a suspect while he or she is standing within the doorway of the residence." Id at 697. This is "settled law in Washington and draws a bright line at the threshold of the home." Id at 698. However, a police officer may make a warrantless arrest supported by probable cause on the resident's porch, after the resident has voluntarily exited the home. Id at 698-99. "[A] police officer who

4

approaches a residence in connection with an investigation, from a common access route, does not violate the resident's reasonable expectation of privacy and . . . a front porch is not a constitutionally protected area."[3] Id. at 699. The arrest of a suspect who is standing in the doorway of his or her home is treated the same as an arrest in the home, because, for Fourth Amendment purposes, the location of the suspect, and not the officer, is material to the issue of whether an arrest occurs in the home. Id. at 700.

The State argues that Solberg is instructive. In Solberg, police went to the home of a suspected marijuana grow operation Id at 691-92. The officers contacted the residents at the home before seeking a search warrant. Id. at 692. They knocked on the door and Solberg's roommate, followed by Solberg, stepped out onto the porch. Id. The police detained Solberg and his roommate for two to three hours while they got a search warrant for the home. Id. at 693. The court held that Solberg's arrest on the porch was valid based on probable cause and that a warrant was not required. Id. at 701.

D.C. argues that Solberg is no longer valid, because it was written before the modern development of the curtilage doctrine. Relying on Florida v Jardines, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) and United States v. Lundin, 817 F.3d 1151 (9th Cir. 2016), D.C. argues that the police violated his rights when they entered his property to arrest him without a warrant.

---

[3] The latter half of this statement—that a front porch is not constitutionally protected—is no longer true under more recent United States Supreme Court cases, at least for the purpose of a search under the Fourth Amendment. See, e g , Florida v. Jardines, 569 U.S. 1, 6-7, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) (recognizing that the front porch is a constitutionally protected area).

In Jardines, police brought a drug-sniffing dog to the home of a suspected marijuana grow operation. 569 U.S. at 3-4. They allowed the dog to walk back and forth on the front porch until the dog sat by the front door, indicating that there were narcotics. Id. at 4. Later that day, the police returned to the home with a search warrant and arrested Jardines as he was fleeing. Id. The Supreme Court stated that "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" Id. at 8 (quoting Kentucky v King, 563 U.S. 452, 469, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011)). But, the Court held that using a trained police dog to investigate the area immediately surrounding the home goes beyond an implied license to visitors, and constitutes a search under the Fourth Amendment. Id at 8-9, 11-12.

Jardines is not directly on point. The question before the court was whether it should suppress evidence because of an unconstitutional search. See 569 U.S. at 10. Specifically, the Court asked whether the porch is a protected area for purposes of a search, it did not address whether it is a protected area for purposes of a seizure. 569 U.S. at 1, 6-7. Here, the trial court already suppressed the evidence from the subsequent search of D.C.'s home. The issue on appeal is whether the trial court should have suppressed D.C.'s statements before and after his arrest, because his seizure on the porch was illegal.

D.C. also likens this case to Lundin, pointing to when Davis testified, "[This w]asn't a 'knock and talk,'" and that "it was a probable cause to arrest."

In Lundin, officers went to the defendant's home around 4:00 a.m. without an arrest or search warrant. 817 F.3d at 1154. After the officers knocked on the front door, Lundin tried to flee out of the back of the house. Id. at 1156. The officers arrested Lundin in his backyard, and then conducted a warrantless search of the yard and house, eventually finding weapons. Id. The government argued that the officers' actions fell under the "knock and talk" exception to the warrant requirement, which permits officers to encroach upon the curtilage to ask questions of the home's occupants. Id at 1158. The court held that the officers exceeded the scope of the customary license to approach a home and knock for two reasons. Id. at 1159. First, the officers went to the home around 4:00 a.m., before normal waking hours, and without evidence that Lundin generally accepted visitors at that hour. Id. Second, because the scope of a license "is often limited to a specific purpose," the officers exceeded that purpose when, following a request to do so, they went to the home intending to arrest Lundin. Id. at 1159-60.

Both in Lundin and here, police went to the defendants' homes without a warrant, but with the intent to arrest. Id. at 1154. In Lundin, the police knocked on the front door, and then arrested the defendant while he was in his backyard, fleeing from the police. Id at 1156. Here, the police knocked on D.C.'s front door, and arrested him on his front porch. The court in Lundin held that the police exceeded the scope of a knock and talk. Id. at 1159-60. The court stated,

> We do not hold that an officer may never conduct a "knock and talk"
> when he or she has probable cause to arrest a resident but does not
> have an arrest warrant. An officer does not violate the Fourth
> Amendment by approaching a home at a reasonable hour and
> knocking on the front door with the intent merely to ask the resident

questions, even if the officer has probable cause to arrest the resident.

817 F.3d at 1160. But, here, Davis's testimony indicates that she did not intend this to be a knock and talk when she went to D.C.'s house.

Following the Ninth Circuit precedent, the arrest should have been found illegal and the postarrest statements suppressed. See id. at 1162. But, while Washington courts always give careful consideration to Ninth Circuit decisions, we are not obligated to follow them. In re Pers  Restraint of Grisby, 121 Wn.2d 419, 430, 853 P.2d 901 (1993). The State Supreme Court has not yet adopted the reasoning of Lundin.

Under Solberg, a warrantless arrest based on probable cause made on the arrestee's front porch is constitutional. 122 Wn.2d at 701. Neither Jardines nor Lundin invalidate the holding in Solberg. D.C. has not challenged the trial court's finding of fact that he was arrested on his front porch. Unchallenged findings of fact are verities on appeal. Robel v  Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002). The trial court did not err in denying the motion to suppress postarrest statements.

## II.   Harmless Error

But, even if we were to follow Lundin and find that the arrest was unlawful, we would evaluate under the constitutional harmless error standard whether, excluding D.C.'s postarrest statement, there was proof beyond a reasonable doubt that D.C. committed the robbery. See State v. Ng, 110 Wn.2d 32, 37, 750 P.2d 632 (1988). "It is well established that constitutional errors may be so insignificant as to be harmless." Id. A constitutional error is harmless if the appellate court is

convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. Id. The State bears the burden of demonstrating harmlessness. State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015). This court employs an "'overwhelming untainted evidence'" test in its analysis of constitutional harmless error. Ng, 110 Wn.2d. at 38 (quoting State v. Guloy, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985)). Under this test, the appellate court looks at only the untainted evidence to determine if the untainted evidence alone is so overwhelming that it necessarily leads to a finding of guilt. Id.

This case involves three main sources of evidence, excluding D.C.'s statements to police after his arrest.[4] First, is S.I.'s description of the robbery. Second, is S.I.'s identification of D.C. Third, is D.C.'s statement to police before his arrest that he would go get the jacket.

S.I. testified at the bench trial, and before the CrR 3.5 hearing. Regarding his testimony, the trial court found that he "described the robbery in detail." Before the trial, S.I. was sent photographs from others who attended the party and, from those photographs, S.I. identified D.C. as the person who robbed him. Then, during her investigation, Detective Davis showed S.I. a photomontage of six males with similar physical descriptions. S.I. picked D.C.'s photograph from the montage and identified him as the person who robbed him at Magnuson Park on August 24, 2016. Detective Davis testified that S.I. had identified D.C. from a photomontage,

---

[4] Another piece of evidence is the jacket itself. Because the State conceded that the retrieval of the jacket from inside the home was an illegal, warrantless search, the trial court granted the motion to suppress the jacket, pursuant to CrR 3.6. The jacket is not included as admissible evidence on appeal.

indicating that D.C. was one of the people that "robbed [S.I.], with the knife, of a coat and some shoes."

D.C. argues that S.I.'s description of the robbery and identification of D.C. is tainted evidence.[5] He argued at oral argument first that S.I.'s identification of D.C. was "tainted" because S.I. was under the influence of alcohol and "at least he was around secondhand marijuana smoke" the night of the robbery. Second, D.C. argues that S I.'s identification from the photomontage was tainted because he had previously seen photographs of D.C. on his own.

Evidence controverting the State's case and presenting a viable defense theory suggests that an error is not harmless. State v Watt, 160 Wn.2d 626, 639, 160 P.3d 640 (2007). However, the question is not whether the defendant has presented a viable defense theory in general, but whether the facts to be proved by the testimonial evidence are reasonably subject to dispute. Id.

On the night of the robbery, S.I. called his father and told him that three juveniles held him at knifepoint and took his jacket and shoes by force. Regarding S.I.'s intoxication and reliability, the trial court found,

> Mr. Wright [S.I.'s father] did not describe [S.I.] as drunk or out of control or unable to handle himself. [S.I.] was likely buzzed or

---

[5] Tainted evidence is evidence that is inadmissible because of a constitutional violation. See State v. Hieb, 107 Wn.2d 97, 110-112, 727 P.2d 239 (1986) (holding that it was harmless error to admit hearsay statements in violation of the confrontation clause because overwhelming untainted evidence proved the defendant's guilt). In Hieb, the court analyzed whether violation of the confrontation clause was harmless error. Id. at 109-10. First, the court eliminated the tainted evidence at issue, the inadmissible hearsay testimony, along with other testimony that the court below had deemed inadmissible. Id at 110. Then, after considering the remaining evidence of the record, it determined that there was overwhelming untainted evidence indicating the defendant's guilt. Id. at 111-12.

intoxicated at different times during the night. However, there is no evidence in this case that [S.I.] was at any time during that night intoxicated to such a degree that he was unable to comport himself or unable to see what was in front of him or unable to report what he was seeing.

The trial court also stated, "Officers described [S.I.] as in control. He was not described as appearing to be intoxicated or drunk."

And, regarding the photomontage, the trial court found,

The evidentiary weight of the montage identification is mitigated significantly by the fact that [S.I.] had previously seen photographs of [D.C.] and had already identified him from those photographs. It is just as likely that [S.I.] was identifying [D.C.] from the photographs he had seen as it was from seeing him at the park.

The trial court's finding is about the weight of the evidence, but not the admissibility.

D.C.'s challenge to S.I.'s description of the robbery and identification of D.C. is not that it is tainted by illegality of the officer's conduct. His evidence challenge is actually to the competency and credibility of the witness and the weight of the evidence. The trial court found S.I.'s description and identification credible. We defer to the trier of fact to judge the credibility of the witnesses and weigh the evidence. State v. Atkins, 130 Wn. App. 395, 402, 123 P.3d 126 (2005). Thus, S.I.'s description and identification of D.C. are not reasonably in dispute.

Finally, D.C. argues that his statement about the jacket is inadmissible as fruit of the poisonous tree, because of the unconstitutional arrest.[6]

---

[6] D.C. also asserted at oral argument that there was "doubt" about D.C.'s prearrest statement about the jacket because he had a jacket that was exactly the same as the one taken from S.I. He seems to suggest that he would not have taken a jacket similar to one that he already owned. The trial court found that D.C. owned a very similar jacket to the one taken during the robbery. But, D.C. also testified that, on the day of his arrest, he had two of the same camouflage jackets in his closet, one of which police took from the home. The fact that there were two

On the motion to suppress, the trial court also found that D.C.'s statement to police while standing in his doorway was admissible. Detective Davis testified that after she told D.C. why she was at his house, D.C. asked her if he could go get the jacket. This was before Davis asked D.C. to step onto the porch, and told him that she was placing him under arrest. D.C. also testified that he told the police, while he was still inside his home, that he could go get the jacket. In its conclusions, the trial court stated,

> When [D.C.] opened the door to his home and was confronted by Detective Davis, he was not under arrest. His freedom was not restricted to a degree normally associated with formal arrest. When Detective Davis informed [D.C.] that she was at his door to, "talk to him about the jacket he took from the kid in Magnuson Park," a few days before, this did not constitute interrogation. [D.C.]'s response was voluntary, intentional, and knowing. Because the meeting at the door constituted neither an arrest nor interrogation, officers were not required to read Miranda warnings to [D.C.] at the doorway. [D.C.]'s statement that he would, "get the jacket," was voluntary and admissible.

This statement is not fruit of the arrest. D.C.'s argument that it is inadmissible fails.

Even assuming D.C.'s statement made after his arrest should have been suppressed, the untainted evidence is overwhelming that D.C. committed first degree robbery. S.I. described the robbery in great detail and identified D.C. as the person who robbed him. The trial court found S.I.'s testimony credible. D.C. voluntarily told police before his arrest that he would "get the jacket." The trial court would have found D.C. guilty beyond a reasonable doubt with the untainted evidence and without his postarrest confession. Therefore, even if the trial court

---

jackets refutes his argument that he would not have taken a jacket similar to one that he already owned.

erred in admitting D.C.'s confession, any error was harmless beyond a reasonable doubt.

We affirm.

_Appelwick, C.J_

WE CONCUR:

_Chun, J._          _Mann, J._